PD-1126-15

PD-1126-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/28/2015 8:52:35 PM
Accepted 9/1/2015 10:31:07 AM
ABEL ACOSTA
CLERK

NO. _____

TO THE

# COURT OF CRIMINAL APPEALS

## OF TEXAS

***************

# BRENT ALLEN BENEFIELD

Petitioner,

v.

# THE STATE OF TEXAS

Respondent.

***************

PETITION FOR DISCRETIONARY REVIEW IN CAUSE NUMBER
02-14-00099-CR FROM THE SECOND COURT OF APPEALS
AND IN CAUSE NUMBER 53,721-C FROM THE
30th DISTRICT COURT OF WICHITA COUNTY

***************

# PETITION FOR DISCRETIONARY REVIEW

***************

FILED IN
COURT OF CRIMINAL APPEALS

September 1, 2015

ABEL ACOSTA, CLERK

John Bennett
Post Office Box 19144
Amarillo, TX 79114
Telephone: (806) 282-4455
Fax: (806) 398-1988
AppealsAttorney@gmail.com
State Bar No. 00785691
Attorney for the Petitioner

**THE PETITIONER REQUESTS ORAL ARGUMENT**

# IDENTITY OF JUDGE, PARTIES AND COUNSEL

**Trial Court Judge**

Hon. Robert P. Brotherton

**Appellant**

Brent Allen Benefield

| | |
|---|---|
| Trial Counsel: | Jim Rasmussen  (State Bar No. 16554300)<br>Wichita County Public Defender<br>Brennon Brady (State Bar No. 24038120)<br>Assistant Public Defender<br>600 Scott Avenue, Suite 204<br>Wichita Falls, Texas 76301-2531<br>Telephone: (940) 766-8199 |
| Appellate Counsel: | John Bennett (State Bar No. 00785691)<br>P.O. Box 19144<br>Amarillo, Texas 79114<br>Telephone: (806) 282-4455 |

**Appellee**

The State of Texas

| | |
|---|---|
| Trial Counsel: | John Gillespie (State Bar No. 24010053)<br>Grace Pandithurai (State Bar No. 24074849)<br>Wichita County Assistant District Attorneys<br>900 7th Street<br>Wichita Falls, Texas 76301<br>Telephone: (940) 766-8113 |
| Appellate Counsel: | John Brasher (State Bar No. 02907800)<br>Wichita County Assistant District Attorney<br>900 7th Street<br>Wichita Falls, Texas 76301<br>Telephone: (940) 766-8113 |

# TABLE OF CONTENTS

Identity of Judge, Parties and Counsel..................................................2

Index of Authorities .......................................................................4

Statement Regarding Oral Argument ..................................................6

Statement of the Case.......................................................................6

Statement of Procedural History........................................................6

Ground for Review .........................................................................7

> May *proof* under TEX. PEN. CODE § 6.02(e) consist of evidence that the jury *did not believe*?

Argument ......................................................................................7

Prayer for Relief.............................................................................9

Certificate of Compliance ...............................................................10

Certificate of Service ......................................................................10

Court of Appeals' Initial Opinion............................................. following page 10

Court of Appeals' Later Opinion .................................. following Initial Opinion

# INDEX OF AUTHORITIES

Cases

*Wasylina v. State*, 275 S.W.3d 908 (Tex.Crim.App. 2009)............................... 7-8

*Wasylina v. State*, 2007 WL 677778 (Tex.App. – Tyler,

    March 7, 2007) (not designated for publication)........................................7


Statutory Provision

TEX. PEN CODE § 6.02(e)..............................................................................7,9

NO. _____

TO THE

# COURT OF CRIMINAL APPEALS

OF TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# BRENT ALLEN BENEFIELD

Petitioner,

v.

# THE STATE OF TEXAS

Respondent.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PETITION FOR DISCRETIONARY REVIEW IN CAUSE NUMBER
02-14-00099-CR FROM THE SECOND COURT OF APPEALS
AND IN CAUSE NUMBER 53,721-C FROM THE
30th DISTRICT COURT OF WICHITA COUNTY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# PETITION FOR DISCRETIONARY REVIEW

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**To the Honorable Judges of the Court of Criminal Appeals:**

COMES NOW Brent Allen Benefield, petitioner in the above cause, and

submits this petition in support of his request for his appeal's remand to the

Second Court of Appeals for new analysis.

## STATEMENT REGARDING ORAL ARGUMENT

Because the petitioner's claim involves the proper review of a constitutional issue, the petitioner requests oral argument.

## STATEMENT OF THE CASE

The petitioner pled not guilty to charges of injury to a child with serious bodily injury and of continuous violence against the family. A jury convicted him of both, but although the indictment accused the petitioner of knowing injury to a child, the verdict was of *reckless* injury to a child. The jury then returned sentencing verdicts of ten and five years' imprisonment, respectively, which the trial court imposed.

## STATEMENT OF PROCEDURAL HISTORY

The court of appeals affirmed the convictions and sentences on February 26, 2015. (Court of Appeals' Initial Opinion, attached). The petitioner filed a motion for rehearing on March 7, 2015. And on July 30, 2015, the court of appeals denied rehearing but withdrew its earlier opinion and issued another. (Court of Appeals' Later Opinion, also attached).

## GROUND FOR REVIEW

May *proof* under TEX. PEN. CODE § 6.02(e) consist of evidence the jury *did not believe*?

## ARGUMENT

In *Wasylina v. State*, 275 S.W.3d 908 (Tex.Crim.App. 2009), a manslaughter case, the jury charge included the lesser-included criminally negligent homicide. The verdict *was* criminally negligent homicide. *Id.* at 909. But finding no record evidence to prompt "a rational jury to find that Appellant is guilty of criminally negligent homicide, but not guilty of manslaughter," the court of appeals ordered an acquittal. *Wasylina v. State*, 2007 WL 677778 (Tex.App. – Tyler, March 7, 2007) (not designated for publication).

A majority of this Court reversed, holding that "proving the greater culpable mental state … necessarily proves the lesser culpable mental state …" *Wasylina*, 275 S.W.3d at 909-10; TEX. PEN CODE § 6.02(e). But three judges dissented, stating § 6.02(e) does not apply where the verdict shows the jury did not believe the evidence of the greater culpable mental state: "the State *did not prove* the greater culpable mental state … which is why the jury acquitted Appellant of manslaughter." *Wasylina*, 275 S.W.3d at 914 (emphasis added).

Here only the conviction for reckless injury to a child is at issue. The trial court charged the jury both on knowing injury to a child, as the indictment accused, and on the lesser-included offense of reckless injury to a child. At closing argument the State requested conviction for "a knowing crime," telling the jury that "*There is really not any evidence that it's reckless.*" (RR, v. 20, p. 69) (emphasis added). But the jury returned a verdict of *reckless* injury to a child. Its appellate brief similarly pointed only to a knowing offense.

In response to the petitioner's claim that insufficient evidence was presented of recklessness, the court of appeals' initial opinion applied the *Wasylina* majority's opinion:

> in our sufficiency review, we can consider the same evidence that [the petitioner] acted knowingly in determining whether the evidence is sufficient to show that he acted recklessly. See Tex. Penal Code Ann. § 6.02 (West 2011) (stating that proof of a higher degree of culpability than that charged constitutes proof of the culpability charged); *Wasylina v. State*, 275 S.W.3d 908, 910 & n.14 (Tex. Crim. App. 2009) (holding that jury could properly convict defendant of criminally negligent homicide even though the State had charged manslaughter and proved a "reckless" culpability)…

(Initial Opinion, attached, p. 9). The court of appeals' later opinion did not refer to *Wasylina* but used its principle, that rejected evidence of a knowing offense still suffices to proves recklessness. (Later Opinion, also attached, p. 13-14). As the *Wasylina* dissent noted, such a conclusion does not address the fact that the jury placed no credence in such evidence of a knowing mental state.

8

"*Proof* of a higher degree of culpability than that charged" unquestionably "constitutes proof of the culpability charged" under § 6.02(e) (emphasis added). This entails that if a defendant is charged merely with simple robbery but the jury believes the evidence establishes aggravated robbery, then simple robbery is clearly proven.

But § 6.02(e) cannot render evidence legally sufficient where the greater degree of culpability is *not* proven. Where the verdict reflects that jury put no stock in the evidence of the greater culpable mental state, then evidence of the higher offense is not proof, and § 6.02(e) does not come into play.

## PRAYER FOR RELIEF

The petitioner prays the Court grant discretionary review and remand the case to the court of appeals for new analysis, or grant all appropriate relief.

Respectfully submitted,

/s/ JOHN BENNETT
John Bennett
Post Office Box 19144
Amarillo, TX 79114
Telephone: (806) 282-4455
Fax: (806) 398-1988
AppealsAttorney@gmail.com
State Bar No. 00785691
Attorney for the Petitioner

9

# CERTIFICATE OF COMPLIANCE

I certify that this entire PDR contains 1,188 words.

/s/ JOHN BENNETT
John Bennett

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing PDR has been served by prepaid U.S. Mail, first class delivery prepaid, on John Gillespie, Esq., and John Brasher, Esq., Assistant Criminal District Attorneys for Wichita County, by United States Mail, first class delivery prepaid, to them at 900 Seventh Street, Wichita Falls, Texas 76310, and by email to them at john.brasher@co.wichita.tx.us, and on Lisa McMinn, Esq., State Prosecuting Attorney, by United States Mail, first class delivery prepaid, to her at P.O. Box 13046, Austin, Texas 78711, and by email to her at lisa.mcminn@spa.texas.gov, all on August 28, 2015.

/s/ JOHN BENNETT
John Bennett

# COURT OF APPEALS' INITIAL OPINION



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00099-CR

BRENT ALLEN BENEFIELD

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

## FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY
## TRIAL COURT NO. 53,721-A

----------

## OPINION

----------

## I. INTRODUCTION

A jury convicted Appellant Brent Allen Benefield of one count of injury to a child by recklessly causing serious bodily injury and one count of continuous violence against the family and found the deadly weapon allegation for both counts to be true. *See* Tex. Penal Code Ann. §§ 22.04, 25.11 (West 2011 & Supp. 2014). The jury assessed his punishment at ten years' confinement on

count one and five years' confinement on count two. The trial court sentenced him accordingly, ordering that the sentences run concurrently. In three issues, Benefield argues that the evidence is insufficient to show that he recklessly committed injury to a child, that his convictions violate double jeopardy, and that he is entitled to further jail-time credit toward his sentence for the continuous-violence-against-the-family conviction. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Benefield and Sally had a son, Lane, together in 2009.[1] Sally and Lane lived with her parents after Lane's birth, but Sally and Benefield eventually married and moved into a house together with Lane in 2010. Sally became pregnant with their second child, Lee, in January 2011. When she was three months pregnant with Lee, Benefield began assaulting Sally. He choked her multiple times; in one incident when she was four months pregnant, Benefield choked her and hit her, giving her a black eye. The assault caused her to have contractions and start bleeding, so she went to the emergency room to make sure that her baby had not been harmed.

When she was six months pregnant, Benefield pushed Sally face down on the bed after she confronted him about not having a job and about the high electricity bill. Sally told their couples' counselor, who advised Sally to make a

---

[1]To protect the anonymity of the children in this case, we will use aliases to refer to all individuals named herein with the exception of the appellant. *See* Tex. R. App. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

2

safety plan and contact a battered woman's shelter. Benefield admitted to the counselor that he had hurt Sally. During another joint counseling session, Benefield became angry at Sally and yelled at her; the counselor asked him to leave until he could act better, and Benefield did not return.

Lee was born in October 2011.[2] After taking one week off, Sally resumed college classes for her teaching degree, and Benefield took care of Lane and Lee while Sally was gone. At Lee's one-month check-up, the pediatrician discovered that Lee had an unexplained spiral fracture to one of his arm bones; the pediatrician opined that "probably somebody picked him up by his arm or twisted his arm in some way." At his two-month check-up, Sally reported that Lee had some bruises on his ankles, and his pediatrician noted two small bruises on Lee's wrists as well. The pediatrician tested Lee's blood for blood disorders that could cause him to bruise easily, and the results came back normal. In January 2012, Sally began student teaching; Benefield stayed home with Lane and Lee while Sally was at school from 7:50 a.m. until 3:00 p.m. during the week.

On February 8, 2012, when Lee was four months old, Sally woke up late for school at 7:30. Lee was awake, cooing and babbling, when Sally got up. Sally woke Benefield before leaving for school and was at school at 8:00 a.m. She received a call around lunchtime informing her that Lee had been taken to the emergency room.

---

[2]Lee's birth was normal; he had some trouble breathing after birth but did not require any oxygen, and the issue quickly resolved.

Benefield talked to the police at the hospital and again the following day. He said that after Sally woke him, he got up, changed Lee's diaper, and made him a bottle. Lee drank four ounces, which was a normal amount for him. Benefield turned on a movie for Lane, and Lee followed the movie with his eyes and was "pretty alert." Around 11:00 a.m., Lee began fussing, so Benefield put him down for a nap. At 11:13 a.m., a friend called Benefield, and the two talked for approximately twenty minutes; Benefield never mentioned to the friend anything unusual about Lee. Around 11:45, Lee started crying, so Benefield changed his diaper. Lee squirmed around and kicked his legs during the diaper change but suddenly went limp. Benefield called 911. He told the 911 operator that he had observed "nothing out of the ordinary, nothing unusual" with Lee that morning. He said that Lee had been unresponsive for two minutes.

Lee was resuscitated at the Wichita Falls hospital and then transported by Care Flight to Cook Children's Hospital in Fort Worth. He presented with an acute, or new, subdural hematoma and a prior subdural hematoma; retinal hemorrhages; an acute rib fracture and two healing rib fractures; ligamentous neck injuries, or injuries to the tissues and ligaments in his spine; corner fractures on the bottom of both his left and right femur bones and on the top of both his left and right humerus bones; and a torn frenulum, which was a recent injury with no signs of healing. Based on the constellation of Lee's injuries, doctors determined that Lee was a "severely battered baby" and diagnosed him with abusive, or non-accidental, head trauma. Lee died in the hospital four days later. Doctors at

4

Cook Children's Hospital determined that the cause of Lee's death was a severe brain injury, causing him to be "neurologically devastated." Doctors opined that the acute subdural hematoma and retinal hemorrhaging was caused by shaking Lee or by shaking with impact, that the ligamentous neck injuries and the fractures to his leg and arm bones resulted from shaking Lee, that the acute rib fracture could have been caused by grabbing Lee or from the resuscitation efforts, and that the torn frenulum was caused by blunt impact to Lee's mouth from an object (likely a pacifier or a bottle) being pushed under his lip.[3]

The State charged Benefield with one count of injury to a child and one count of continuous family violence. The injury-to-a-child count alleged that Benefield knowingly or recklessly caused serious bodily injury to Lee "by causing blunt trauma to the head and/or brain of [Lee], to wit: by shaking [Lee] with his hands and/or by striking [Lee] with or against a hard or soft object or surface." The continuous-family-violence count alleged six acts of assault against Sally based on his hitting her and choking her on six different occasions while she was pregnant with Lee and alleged one act of assault against Lee based on Lee's torn frenulum.

---

[3]One of Lee's treating doctors testified that the corner fractures to his arms and legs were symmetrical, which could have been caused by shaking Lee such that his arms and legs flailed at the same time.

5

## III. SUFFICIENCY OF THE EVIDENCE

In his first issue, Benefield argues that the evidence is insufficient to support his conviction for injury to a child by recklessly causing serious bodily injury.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App.

6

2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Dobbs*, 434 S.W.3d at 170; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits an offense if the person intentionally, knowingly, or recklessly causes serious bodily injury to a child. Tex. Penal Code Ann. § 22.04(a). When the conduct is committed intentionally or knowingly, the offense is a first degree felony; when the conduct is committed recklessly, it is a second-degree felony. *Id.* § 22.04(e). Injury to a child is a result-oriented offense requiring a mental state that relates not to the specific conduct but to the result of that conduct. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

A person acts recklessly, or is reckless, with respect to a result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. Tex. Penal Code Ann. § 6.03(c) (West 2011). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

7

Here, viewing the evidence in the light most favorable to the verdict, the evidence showed the following. Lee acted normally on the morning of February 8, 2012, from the time that Sally awoke at 7:30 a.m. until Benefield called 911 around 12:08 p.m. Benefield told the 911 operator on the phone and later told the police that Lee had been acting normally all morning until he suddenly "went limp" during a diaper change.

At the hospital, Lee presented with multiple injuries evidencing that he was a severely beaten baby. Specifically regarding the head injuries that Lee presented with on February 8, 2012, Dr. Jayme Coffman, the medical director of the child abuse program at Cook Children's Hospital, testified that Lee would have been in a serious state of distress that would have been "immediately apparent" to a caretaker right after sustaining those head injuries. Pediatric radiologist Dr. Hayden Head testified that Lee's brain injuries were caused from shaking or shaking with impact. He explained that a four-month-old baby with Lee's brain injuries would be incapable of appearing normal for any period of time after the brain injury was inflicted; the baby would be unable to drink four ounces of milk or follow the lights on a TV with his eyes after sustaining that injury. Although some of Lee's injuries could not be dated or occurred weeks prior to the day that Benefield called 911,[4] the doctors all agreed that the severe

---

[4]For example, Dr. Head testified that the prior subdural hemorrhage in Lee's head could have occurred two to three weeks earlier, that the rib fractures that showed signs of healing could have occurred three to four weeks earlier, and

brain injury that ultimately led to Lee's death must have occurred that morning immediately prior to Benefield calling 911.

Benefield argues on appeal that the State failed to introduce any evidence that he acted recklessly and instead introduced evidence that either he acted intentionally or knowingly (by shaking or by shaking with impact) or that Lee's injuries stemmed from an internal cause for which no one was responsible. But in our sufficiency review, we can consider the same evidence that Benefield acted knowingly in determining whether the evidence is sufficient to show that he acted recklessly. *See* Tex. Penal Code Ann. § 6.02 (West 2011) (stating that proof of a higher degree of culpability than that charged constitutes proof of the culpability charged); *Wasylina v. State*, 275 S.W.3d 908, 910 & n.14 (Tex. Crim. App. 2009) (holding that jury could properly convict defendant of criminally negligent homicide even though the State had charged manslaughter and proved a "reckless" culpability); *Ledet v. State*, No. 02-10-00281-CR, 2013 WL 1830801, at *1 (Tex. App.—Fort Worth May 2, 2013, pet. ref'd) (mem. op., not designated for publication) ("[B]ecause sexual assault is a lesser-included offense of aggravated sexual assault, if the complainant's testimony was sufficient to support the greater offense, her testimony necessarily also proved the lesser offense.").

---

that the corner fractures to Lee's arms could have occurred two to three weeks earlier.

Based on the evidence that Lee acted normally on the morning of the incident, that Benefield was his sole caretaker from approximately 8:00 a.m. until he called 911 at 12:08 p.m., that Lee's extensive brain injuries would have been immediately apparent once sustained, and that Lee's injuries were consistent with and indicative of abusive head trauma, we hold that a rational trier of fact could have found beyond a reasonable doubt that Benefield, by causing blunt force trauma to Lee's head (by shaking Lee or by striking him with or against a hard or soft object or surface), was aware of but consciously disregarded a substantial and unjustifiable risk that Lee would suffer serious bodily injury. *See* Tex. Penal Code Ann. § 6.03(c). That is, sufficient evidence exists in the record that Benefield acted recklessly in causing serious bodily injury to Lee.[5] We overrule Benefield's first issue.

## IV. DOUBLE JEOPARDY

In his third issue, Benefield argues that his convictions for continuous violence against the family and injury to a child violate double jeopardy because

---

[5]Benefield points to the State's closing argument in support of his claim of insufficient evidence of recklessness. The State argued, "[I]t's a knowing crime, and I would ask each and every one of you to convict him of a knowing crime. There is really not any evidence that it's reckless. There's no evidence that . . . there was some sort of a risk that he perceived and proceeded anyway." But arguments are not evidence. *See Woods v. State*, 301 S.W.3d 327, 332, n.1 (Tex. App.—Houston [14th Dist.] 2009, no pet.). And even if all of the evidence pointed to a knowing culpable mental state, as we stated above, we can consider such evidence in our sufficiency review of evidence that Benefield acted recklessly. *See* Tex. Penal Code Ann. § 6.02; *Wasylina*, 275 S.W.3d at 910.

at least some of the conduct of the injury to a child offense is the same as an element of the continuous violence offense.

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. Const. amend. V. Generally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006).

A potential double jeopardy violation may be forfeited by the defendant's failure to assert it in the trial court. *Langs v. State*, 183 S.W.3d 680, 686–87 (Tex. Crim. App. 2006). But a double jeopardy claim may be raised for the first time on appeal "when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000) (footnotes omitted).

Here, Benefield did not raise his double jeopardy claim in the trial court. Thus, the alleged double jeopardy violation must be clearly apparent from the face of the record. *See Langs*, 183 S.W.3d at 686–87. Benefield argues that, in convicting him of continuous violence against the family, the jury could have relied upon the same conduct that it relied upon in convicting him of injury to a child because, in addition to multiple allegations of assault against Sally, the

11

continuous-violence-against-the-family indictment also alleged an assault against Lee based on the torn frenulum injury.[6] But the jury returned a general verdict, and we do not know what acts it relied upon in convicting Benefield of continuous violence against the family. The six acts of violence against Sally and the one act against Lee were submitted to the jury disjunctively, and the jury had to find that Benefield committed at least two of the seven acts to convict him of continuous violence against the family. *See* Tex. Penal Code Ann. § 25.11 ("A person commits an offense if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an [assault against a family member]."). Because the jury could have relied on two or more of the alleged acts of violence against Sally in convicting him of continuous violence against the family, Benefield's double jeopardy claim is not clear from the face of the record. *See Langs*, 183 S.W.3d at 686–87; *Gonzalez*, 8 S.W.3d at 643.

Benefield argues that the continuous-violence-against-the-family statute imposes a double jeopardy bar that applies here to "trump[]" the general raise-or-waive principle set forth above. Section 25.11 provides,

---

[6]Specifically, the continuous-family-violence indictment alleged that Benefield intentionally or recklessly caused bodily injury to Lee "by causing [Lee's] frenulum to tear, by striking [Lee's] mouth with a bottle and/or [Benefield's] hand, and/or by striking [Lee's] mouth with or against a hard or soft object or surface and/or by manner and means unknown."

12

A defendant may not be convicted in the same criminal action of another offense the victim of which is an alleged victim of the offense under Subsection (a) and an element of which is any conduct that is alleged as an element of the offense under Subsection (a) unless the other offense:

(1) is charged in the alternative;

(2) occurred outside the period in which the offense alleged under Subsection (a) was committed; or

(3) is considered by the trier of fact to be a lesser included offense of the offense alleged under Subsection (a).

Tex. Penal Code Ann. § 25.11(c). As applied here, Benefield argues that an element of the injury-to-a-child offense ("striking [Lee] with or against a hard or soft object or surface") was alleged as an element of the continuous-violence-against-the-family offense ("striking [Lee's] mouth with or against a hard or soft object or surface"). But even if Benefield is correct that an objection is not required to raise a double jeopardy complaint based on section 25.11, the allegation of assault against Lee in the continuous-violence-against-the-family offense was the act causing injury to Lee's mouth—the frenulum tear—whereas the allegation of assault against Lee in the injury-to-a-child count was the act causing blunt trauma to Lee's head or brain, specifically by shaking him or by striking him with or against an object or surface. As Dr. Coffman opined, the injury to Lee's mouth—the frenulum tear—was caused by blunt impact to his mouth, likely from a pacifier or a bottle being pushed under his lip. Dr. Coffman explained that the action that caused Lee's injury to his mouth was separate and distinct from that which caused his brain injury. Thus, the conduct alleged in the

13

injury-to-a-child offense was not the same conduct alleged as part of the continuous-violence-against-the-family offense. *See* Tex. Penal Code Ann. § 25.11(c). Benefield's convictions for distinct offenses based on different conduct do not present the double jeopardy situation prohibited under penal code section 25.11. *See id.; see also Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) (explaining that the court's determination that violations of separate and distinct statutory aggravated sexual assault offenses involved separate and distinct acts ended the inquiry for double jeopardy purposes).

For the above reasons, we overrule Benefield's third issue.

## V. Jail Time Credit

In his fourth issue, Benefield argues that he is entitled to further jail-time credit toward his sentence for his continuous-violence-against-the-family conviction. The trial court awarded him 133 days' jail-time credit toward his sentence for the continuous-violence-against-the-family conviction, but he argues that he should have been given credit for the entire 653 days he spent in jail after he was arrested for injury to a child.[7]

---

[7] The State argues that direct appeal is not the proper vehicle to present the issue of pre-sentence jail credit. We agree that typically, the correct avenue to seek a credit is through a motion for judgment nunc pro tunc, but when the alleged failure to award jail credit involves the exercise of judicial reasoning, a judgment nunc pro tunc is not the proper remedy. *See Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007). Because the allegation here involves more than an alleged miscalculation or other clerical error, we will address the merits of the claim. *See id.; see also Blackerby v. State*, No. 03-11-00272-CR, 2012 WL 6097306, at *3 (Tex. App.—Austin Dec. 5, 2012, no pet.) (mem. op., not designated for publication) (addressing merits of similar jail-time-credit

The trial court is required by law to credit the sentence of a defendant for time the defendant spent "in jail *for the case* . . . from the time of his arrest and confinement until his sentence by the trial court." Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a)(1) (West Supp. 2014) (emphasis added); *see also* Tex. R. App. P. 23.2(b). In this case, Benefield essentially argues that the injury-to-a-child charge and the subsequent continuous-violence-against-the-family charge constitute the same "case" for purposes of pre-sentence jail-time credit because both involve the same conduct. We have already explained above that the act against Lee alleged in the injury-to-a-child count was separate and distinct from the act alleged in the continuous-violence-against-the-family count. Benefield was originally arrested on April 17, 2012, on the sole charge of injury to a child by causing blunt trauma to Lee's "head and/or brain." A grand jury indicted him for continuous-violence-against-the-family on September 18, 2013. The time spent "in jail for the [continuous-violence-against-the-family] case" ran from the date of his indictment for that offense until the date of his sentence. Because the trial court correctly awarded jail-time credit based on that period of time, we overrule Benefield's fourth issue. *See* Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a)(1); *see also Collins v. State*, 318 S.W.3d 471, 473 (Tex. App.—Amarillo 2010, pet. ref'd) ("[T]he credit at issue relates not just to any time the defendant spent

---

argument because issue involved judicial reasoning such that nunc pro tunc judgment would have been inappropriate).

15

incarcerated before conviction. Rather, it is the time one is incarcerated for the case in which he is ultimately tried and convicted."); *Blackerby*, 2012 WL 6097306, at *3 (holding appellant not entitled to jail-time credit on intoxication manslaughter conviction for time spent in jail after arrest for felony DWI when not indicted for intoxication manslaughter until later date); *Martinez v. State*, No. 13-04-00085-CR, 2005 WL 1805500, at *3 (Tex. App.—Corpus Christi July 28, 2005, no pet.) (mem. op., not designated for publication) ("A trial court must award credit for time served for the same offense and not time incarcerated pre-trial for independent offenses.").

## VI. CONCLUSION

Having overruled Benefield's three issues, we affirm the trial court's judgment.[8]

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

PUBLISH

DELIVERED: February 26, 2015

---

[8]Benefield expressly waived his second issue in a reply brief. Therefore, we do not consider it.

# COURT OF APPEALS'
# LATER OPINION



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00099-CR

---

BRENT ALLEN BENEFIELD                                                    APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY
TRIAL COURT NO. 53,721-A

----------

## MEMORANDUM OPINION[1] ON REHEARING

----------

### I. INTRODUCTION

On February 26, 2015, this court issued an opinion affirming the trial court's judgment. Appellant Brent Allen Benefield filed a motion for rehearing asserting that because the jury did not find him guilty of the offense of injury to a child with serious bodily injury committed knowingly but instead found him guilty

---

[1]See Tex. R. App. P. 47.4.

only of the offense of injury to a child with serious bodily injury committed recklessly, we erred by relying on evidence of knowing injury in performing our sufficiency analysis of the evidence supporting reckless injury. We deny Benefield's motion for rehearing but withdraw our prior opinion and judgment dated February 26, 2015, and substitute the following opinion and judgment to clarify our holding that the evidence is sufficient to support Benefield's conviction for injury to a child with serious bodily injury committed recklessly.

A jury convicted Benefield of one count of injury to a child by recklessly causing serious bodily injury and one count of continuous violence against the family and found the deadly-weapon allegation for both counts to be true. *See* Tex. Penal Code Ann. §§ 22.04, 25.11 (West 2011 & Supp. 2014). The jury assessed his punishment at ten years' confinement on count one and five years' confinement on count two. The trial court sentenced him accordingly, ordering that the sentences run concurrently. In three issues, Benefield argues that the evidence is insufficient to show that he recklessly committed injury to a child, that his convictions violate double jeopardy, and that he is entitled to further jail-time credit toward his sentence for the continuous-violence-against-the-family conviction. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Benefield and Sally had a son, Lane,[2] together in 2009. Sally and Lane lived with her parents after Lane's birth, but Sally and Benefield eventually married and moved into a house together with Lane in 2010. Sally became pregnant with their second child, Lee, in January 2011. When she was three months' pregnant with Lee, Benefield began assaulting Sally. He choked her multiple times; in one incident when she was four months' pregnant, Benefield choked her and hit her, giving her a black eye. The assault caused her to have contractions and start bleeding, so she went to the emergency room to make sure that her baby had not been harmed.

When she was six months' pregnant, Benefield pushed Sally face down on the bed after she confronted him about not having a job and about the high electricity bill. Sally told their couples' counselor, who advised Sally to make a safety plan and to contact a battered woman's shelter. Benefield admitted to the counselor that he had hurt Sally. During another joint counseling session, Benefield became angry at Sally and yelled at her; the counselor asked him to leave until he could act better, and Benefield did not return.

---

[2]To protect the anonymity of the children in this case, we will use aliases to refer to all individuals named herein with the exception of the appellant. *See* Tex. R. App. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

Lee was born in October 2011.[3]  After taking off one week, Sally resumed college classes for her teaching degree, and Benefield took care of Lane and Lee while Sally was gone.  At Lee's one-month check-up, the pediatrician discovered that Lee had an unexplained spiral fracture to one of his arm bones; the pediatrician opined that "probably somebody picked him up by his arm or twisted his arm in some way."  At his two-month check-up, Sally reported that Lee had some bruises on his ankles, and his pediatrician noted two small bruises on Lee's wrists as well.  The pediatrician tested Lee's blood for blood disorders that could cause him to bruise easily, and the results came back normal.  In January 2012, Sally began student teaching; Benefield stayed home with Lane and Lee while Sally was at school from 7:50 a.m. until 3:00 p.m. during the week.

On February 8, 2012, when Lee was four months old, Sally woke up late for school at 7:30.  Lee was awake, cooing and babbling, when Sally got up.  Sally woke Benefield before leaving for school and was at school at 8:00 a.m.  She received a call around lunchtime informing her that Lee had been taken to the emergency room.

Benefield talked to the police at the hospital and again the following day.  He said that after Sally woke him, he got up, changed Lee's diaper, and made him a bottle.  Lee drank four ounces, which was a normal amount for him.  Benefield turned on a movie for Lane, and Lee followed the movie with his eyes

_____
[3]Lee's birth was normal; he had some trouble breathing after birth but did not require any oxygen, and the issue quickly resolved.

and was "pretty alert." Around 11:00 a.m., Lee began fussing, so Benefield put him down for a nap. At 11:13 a.m., a friend called Benefield, and the two talked for approximately twenty minutes; Benefield never mentioned to the friend anything unusual about Lee. Around 11:45 a.m., Lee started crying, so Benefield changed his diaper. Lee squirmed around and kicked his legs during the diaper change but suddenly went limp and started coughing up blood. Benefield called 911. He told the 911 operator that he had observed "nothing out of the ordinary, nothing unusual" with Lee that morning. He said that Lee had been unresponsive for two minutes.

The Wichita Falls Police Department, the Wichita Falls Fire Department, and Emergency Medical Services responded to Benefield's 911 call. Police Officer Brian Williams testified that Benefield admitted him to the home when he arrived and led him to the back master bedroom where Lee was lying on the bed. Officer Williams thought Lee was dead. Officer Williams observed blood on Lee's mouth, blood on the baby blanket that he was lying on, and bloody baby wipes in the nearby trashcan. EMS personnel arrived, provided medical attention to Lee, and transported him to the Wichita Falls hospital. Police Patrol Sargent Mike Younts arrived at the scene at this point; as he was asking Benefield to leave the home with Benefield's other two-year-old son, Benefield "came up to [him] on his own and asked, 'Do you think it was shaken?'"

Lee was resuscitated at the Wichita Falls hospital and then transported by Care Flight to Cook Children's Hospital in Fort Worth. He presented with an

5

acute, or new, subdural hematoma and a prior subdural hematoma; retinal hemorrhages; an acute rib fracture and two healing rib fractures; ligamentous neck injuries, or injuries to the tissues and ligaments in his spine; corner fractures on the bottom of both his left and right femur bones and on the top of both his left and right humerus bones; and a torn frenulum, which was a recent injury with no signs of healing. Based on the constellation of Lee's injuries, doctors determined that Lee was a "severely battered baby" and diagnosed him with abusive, or non-accidental, head trauma. But doctors agreed that no physical evidence existed on Lee's head indicating it had impacted a hard or soft surface. Lee died in the hospital four days later. Doctors at Cook Children's Hospital determined that the cause of Lee's death was a severe brain injury, causing him to be "neurologically devastated." Doctors opined that the acute subdural hematoma and retinal hemorrhaging was caused by shaking Lee or by shaking with impact, that the ligamentous neck injuries and the fractures to his leg and arm bones resulted from shaking Lee, that the acute rib fracture could have been caused by grabbing Lee or from the resuscitation efforts, and that the torn frenulum was caused by blunt impact to Lee's mouth from an object (likely a pacifier or a bottle) being pushed under his lip.[4]

_____

[4]One of Lee's treating doctors testified that the corner fractures to his arms and legs were symmetrical, which could have been caused by shaking Lee such that his arms and legs flailed at the same time.

The State charged Benefield with one count of injury to a child and one count of continuous family violence. The injury-to-a-child count alleged that Benefield knowingly or recklessly caused serious bodily injury to Lee "by causing blunt trauma to the head and/or brain of [Lee], to wit: by shaking [Lee] with his hands and/or by striking [Lee] with or against a hard or soft object or surface." The continuous-family-violence count alleged six acts of assault against Sally based on Benefield's hitting her and choking her on six different occasions while she was pregnant with Lee and alleged one act of assault against Lee based on Lee's torn frenulum.

### III. SUFFICIENCY OF THE EVIDENCE

In his first issue, Benefield argues that the evidence is insufficient to support his conviction for injury to a child by recklessly causing serious bodily injury because the evidence does not show that he was the person who inflicted Lee's injuries and because the evidence supports only a finding of intentional or knowing conduct but not reckless conduct.

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the

7

trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Dobbs*, 434 S.W.3d at 170; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits an offense if the person intentionally, knowingly, or recklessly causes serious bodily injury to a child. Tex. Penal Code Ann. § 22.04(a). When the conduct is committed intentionally or knowingly, the offense is a first-degree felony; when the conduct is committed recklessly, it is a

8

second-degree felony. *Id.* § 22.04(e). A person acts recklessly, or is reckless, with respect to a result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c) (West 2011). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Morales v. State*, 828 S.W.2d 261, 263 (Tex. App.—Amarillo 1992), *aff'd*, 853 S.W.2d 583 (Tex. Crim. App. 1993). Ordinarily, the culpable mental state must be inferred from the acts of the accused or the surrounding circumstances, which include not only acts but also words and conduct. *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984). Injury to a child is a result-oriented offense requiring a mental state that relates not to the specific conduct but to the result of that conduct. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). That is, the State must prove that the defendant caused the result with the requisite criminal intent. *Id.*; *Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994).

## B.  Sufficiency of the Evidence that Benefield
## Inflicted Lee's Injuries on February 8, 2012

Here, viewing the evidence in the light most favorable to the verdict, the evidence shows the following.  Lee acted normally on the morning of February 8, 2012, from the time that Sally woke up at 7:30 a.m. until she left for school; Benefield called 911 around 12:08 p.m. claiming that Lee had acted normally all morning until Lee purportedly "went limp" and started coughing up blood two minutes prior to Benefield's 911 call.   Dr. Jayme Coffman, the medical director of the child-abuse program at Cook Children's Hospital, testified that Lee would have been in a serious state of distress that would have been "immediately apparent" to a caretaker right after sustaining his head injuries.   Pediatric radiologist Dr. Hayden Head also noted that Lee's brain injuries, which Dr. Head asserted were caused from shaking or shaking with impact, would have prevented Lee from acting or appearing normal for any period of time after the brain injury was inflicted.  Although some of Lee's injuries could not be dated or occurred weeks prior to the day that Benefield had called 911,[5] the doctors all agreed that the severe brain injury that ultimately led to Lee's death occurred that morning immediately prior to Benefield's calling 911.  Sally was at school when Lee sustained his injuries; Lee was in Benefield's sole care at that time.   Thus,

_____

[5]For example, Dr. Head testified that the prior subdural hemorrhage in Lee's head could have occurred two to three weeks earlier, that the rib fractures that showed signs of healing could have occurred three to four weeks earlier, and that the corner fractures to Lee's arms could have occurred two to three weeks earlier.

although Benefield challenges the sufficiency of the evidence to show that he, rather than Sally, had inflicted Lee's injuries, a rational jury could have reasonably concluded the opposite. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

## C. Sufficiency of the Evidence of Requisite Reckless Mens Rea

Benefield also challenges the sufficiency of the evidence to support the "reckless" element of his conviction for injury to a child with serious bodily injury committed recklessly. He argues that because the evidence established or supported an inference only that Lee's injuries were *intentionally or knowingly* inflicted (even though the jury declined to convict him of injury to a child with serious bodily injury committed intentionally or knowingly), no evidence exists supporting the jury's finding that Lee's serious bodily injury was *recklessly* inflicted.[6] In support of this sufficiency challenge, Benefield points to the State's closing argument, wherein the State explicitly requested the jury to convict Benefield of a knowing crime because "[t]here is really not any evidence that it's reckless."

---

[6]Although acknowledging that injury to a child is a result-oriented offense, Benefield nonetheless argues that "[t]he act of shaking a baby and thereby causing its death, particularly as the State accused here, requires a great deal of force and many individual 'shakes,' and thus is most unlikely to have been a reckless act rather than a knowing one." But, this contention recasts the offense as a nature-of-conduct offense. *See generally Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011).

Closing argument is not evidence. *See, e.g.*, *Woods v. State*, 301 S.W.3d 327, 332, n.1 (Tex. App.—Houston [14th Dist.] 2009, no pet.). And our sufficiency review is not related to, or limited by, the State's characterization of the evidence in closing argument; in our sufficiency review, we examine the evidence that was admitted and view it in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt the reckless element of Benefield's offense. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

Because the offense of injury to a child is a result-oriented offense requiring a mental state that relates not to the defendant's specific conduct but to the result of that conduct, in conducting our sufficiency review, we examine Benefield's conduct to determine whether

(1) the alleged act of Benefield shaking Lee with his hands and/or striking Lee with or against a hard or soft object or surface, viewed objectively at the time of its commission, created a "substantial and unjustifiable" risk of the type of harm that occurred;

(2) that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation (i.e., it involved an "extreme degree of risk, considering the probability and magnitude of the potential harm to others");

(3) Benefield was consciously aware of that "substantial and unjustifiable" risk at the time of the conduct; and

(4) Benefield consciously disregarded that risk.

*See Williams*, 235 S.W.3d at 755–56.

12

Viewing the evidence in the light most favorable to the jury's verdict finding Benefield guilty of reckless injury to a child, the evidence shows that Lee suffered severe injuries from being shaken. Dr. Coffman testified about a slide shown to the jury demonstrating the "shaking mechanism." She testified,

> [You see] the head going all the way back and then all the way forward, but it's not just straight translation, right, so it's not just straight forward and backward. A baby can't hold their head stiff like that so you have some rotation as well. And so when their head is going forward and backward, there will be rotation in addition because you can see that his head's not going just straight like a woodpecker, right. It's - - those are rotations that cause additional forces inside the head.

Dr. Coffman explained that a reasonable adult exerting the type of severe forces necessary to create the type of diffuse brain injury suffered by four-month-old Lee would know that the force he was exerting was likely to harm or kill the baby. Although Dr. Coffman's testimony was couched in terms of Benefield's *knowing* that his conduct in shaking Lee was reasonably certain to cause the result suffered by Lee,[7] the jury was free to disbelieve that Benefield was reasonably certain of the result to Lee of Benefield's shaking Lee and/or striking Lee. The jury was free to instead believe that Benefield's shaking of Lee with his hands and/or his striking of Lee, viewed objectively at the time Benefield did it, created a "substantial and unjustifiable" risk of the type of harm that Lee suffered, that the risk of harm was of a magnitude that disregarding it was a gross deviation from

---

[7]*See* Tex. Penal Code Ann. § 6.03(b) (defining a defendant's knowing mental state with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result).

13

the standard of care that a reasonable person would have exercised in the same situation, that Benefield was consciously aware of that risk when he shook Lee and/or struck Lee, and that he consciously disregarded it. *See, e.g.*, *Cleburn v. State*, 138 S.W.3d 542, 544–45 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (holding evidence sufficient to support reckless element of injury to a child with bodily injury when defendant rammed his truck into car containing visible car seat); *Ehrhardt v. State*, No. 06-02-00209-CR, 2003 WL 22004238, at *3 (Tex. App.—Texarkana Aug. 26, 2003, no pet.) (not designated for publication) (holding evidence sufficient to support reckless element of injury to a child with bodily injury when defendant bit child's arm).

Viewing all of the evidence in the light most favorable to the jury's verdict, including the above evidence and the evidence that Lee had acted normally on the morning of the incident, that Benefield was his sole caretaker from approximately 8:00 a.m. until he called 911 at 12:08 p.m., that Lee's extensive brain injuries would have been immediately apparent once sustained, and that Lee's injuries were consistent with and indicative of abusive head trauma, we hold that a rational trier of fact could have found beyond a reasonable doubt that Benefield—by causing blunt force trauma to Lee's head (by shaking Lee or by striking him with or against a hard or soft object or surface)—was aware of but consciously disregarded a substantial and unjustifiable risk that Lee would suffer serious bodily injury. *See* Tex. Penal Code Ann. § 6.03(c); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Cleburn*, 138 S.W.3d at 544–45; *Ehrhardt*, 2003 WL

14

22004238, at \*3.  That is, sufficient evidence exists in the record that Benefield acted recklessly in causing serious bodily injury to Lee.[8]

We overrule Benefield's first issue.

## IV. DOUBLE JEOPARDY

In his third issue, Benefield argues that his convictions for continuous violence against the family and injury to a child violate double jeopardy because at least some of the conduct of the injury-to-a-child offense is the same as an element of the continuous-violence offense.

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense.  U.S. Const. amend. V.  Generally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006).

---

[8]Although Benefield cites *Williams v. State* in support of this sufficiency challenge to the reckless element of his conviction, it is inapplicable to the present facts.  *See* 704 S.W.2d 156, 158–59 (Tex. App.—Fort Worth 1986, no pet.).  In *Williams*, the defendant inflicted numerous injuries on a child over a period of time by holding a hair dryer on the child until the child suffered a burn and by pressing a heated fork against the child until the child suffered a burn.  *Id*. On appeal, this court rejected the defendant's complaint that the trial court erred by failing to instruct the jury on recklessness.  *Id*. at 158.  We held that, considering the result of the conduct—the nature of the child's injuries and the manner in which they were inflicted—no evidence existed that the defendant had acted recklessly in causing the injuries.  *Id*. at 158–59.

A potential double-jeopardy violation may be forfeited by the defendant's failure to assert it in the trial court. *Langs v. State*, 183 S.W.3d 680, 686–87 (Tex. Crim. App. 2006). But a double-jeopardy claim may be raised for the first time on appeal "when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000) (footnotes omitted).

Here, Benefield did not raise his double-jeopardy claim in the trial court. Thus, the alleged double-jeopardy violation must be clearly apparent from the face of the record. *See Langs*, 183 S.W.3d at 686–87. Benefield argues that, in convicting him of continuous violence against the family, the jury could have relied upon the same conduct that it relied upon in convicting him of injury to a child because, in addition to multiple allegations of assault against Sally, the continuous-violence-against-the-family indictment also alleged an assault against Lee based on the torn frenulum injury.[9] But the jury returned a general verdict, and we do not know what acts it relied upon in convicting Benefield of continuous violence against the family. The six acts of violence against Sally and the one act against Lee were submitted to the jury disjunctively, and the jury had to find

---

[9]Specifically, the continuous-family-violence indictment alleged that Benefield had intentionally or recklessly caused bodily injury to Lee "by causing [Lee's] frenulum to tear, by striking [Lee's] mouth with a bottle and/or [Benefield's] hand, and/or by striking [Lee's] mouth with or against a hard or soft object or surface and/or by manner and means unknown."

16

that Benefield committed at least two of the seven acts to convict him of continuous violence against the family. *See* Tex. Penal Code Ann. § 25.11 ("A person commits an offense if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an [assault against a family member]."). Because the jury could have relied on two or more of the alleged acts of violence against Sally in convicting him of continuous violence against the family, Benefield's double-jeopardy claim is not clear from the face of the record. *See Langs*, 183 S.W.3d at 686–87; *Gonzalez*, 8 S.W.3d at 643.

Benefield argues that the continuous-violence-against-the-family statute imposes a double-jeopardy bar that applies here to "trump[]" the general raise-or-waive principle set forth above. Section 25.11 provides,

> A defendant may not be convicted in the same criminal action of another offense the victim of which is an alleged victim of the offense under Subsection (a) and an element of which is any conduct that is alleged as an element of the offense under Subsection (a) unless the other offense:
>
> (1) is charged in the alternative;
>
> (2) occurred outside the period in which the offense alleged under Subsection (a) was committed; or
>
> (3) is considered by the trier of fact to be a lesser included offense of the offense alleged under Subsection (a).

Tex. Penal Code Ann. § 25.11(c). As applied here, Benefield argues that an element of the injury-to-a-child offense ("striking [Lee] with or against a hard or soft object or surface") was alleged as an element of the continuous-violence-

17

against-the-family offense ("striking [Lee's] mouth with or against a hard or soft object or surface"). But even if Benefield is correct that an objection is not required to raise a double-jeopardy complaint based on section 25.11, the allegation of assault against Lee in the continuous-violence-against-the-family offense was the act causing injury to Lee's mouth—the frenulum tear—whereas the allegation of assault against Lee in the injury-to-a-child count was the act causing blunt trauma to Lee's head or brain, specifically by shaking him or by striking him with or against an object or surface. As Dr. Coffman opined, the injury to Lee's mouth—the frenulum tear—was caused by blunt impact to his mouth, likely from a pacifier or a bottle being pushed under his lip. Dr. Coffman explained that the action that caused Lee's injury to his mouth was separate and distinct from that which caused his brain injury. Thus, the conduct alleged in the injury-to-a-child offense was not the same conduct alleged as part of the continuous-violence-against-the-family offense. *See* Tex. Penal Code Ann. § 25.11(c). Benefield's convictions for distinct offenses based on different conduct do not present the double-jeopardy situation prohibited under penal code section 25.11. *See id.*; *see also Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) (explaining that the court's determination that violations of separate and distinct statutory aggravated sexual assault offenses involved separate and distinct acts ended the inquiry for double-jeopardy purposes).

For the above reasons, we overrule Benefield's third issue.

18

## V. JAIL-TIME CREDIT

In his fourth issue, Benefield argues that he is entitled to further jail-time credit toward his sentence for his continuous-violence-against-the-family conviction. The trial court awarded him 133 days' jail-time credit toward his sentence for the continuous-violence-against-the-family conviction, but he argues that he should have been given credit for the entire 653 days he spent in jail after he was arrested for injury to a child.[10]

The trial court is required by law to credit the sentence of a defendant for time the defendant spent "in jail *for the case* . . . from the time of his arrest and confinement until his sentence by the trial court." Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a)(1) (West Supp. 2014) (emphasis added); *see also* Tex. R. App. P. 23.2(b). In this case, Benefield essentially argues that the injury-to-a-child charge and the subsequent continuous-violence-against-the-family charge constitute the same "case" for purposes of presentence jail-time credit because

---

[10]The State argues that direct appeal is not the proper vehicle to present the issue of presentence jail credit. We agree that typically the correct avenue to seek a credit is through a motion for judgment nunc pro tunc, but when the alleged failure to award jail credit involves the exercise of judicial reasoning, a judgment nunc pro tunc is not the proper remedy. *See Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007). Because the allegation here involves more than an alleged miscalculation or other clerical error, we will address the merits of the claim. *See id.*; *see also Blackerby v. State*, No. 03-11-00272-CR, 2012 WL 6097306, at *3 (Tex. App.—Austin Dec. 5, 2012, no pet.) (mem. op., not designated for publication) (addressing merits of similar jail-time-credit argument because issue involved judicial reasoning such that nunc pro tunc judgment would have been inappropriate).

both involve the same conduct. We have already explained above that the act against Lee alleged in the injury-to-a-child count was separate and distinct from the act alleged in the continuous-violence-against-the-family count. Benefield was originally arrested on April 17, 2012, on the sole charge of injury to a child by causing blunt trauma to Lee's "head and/or brain." A grand jury indicted him for continuous-violence-against-the-family on September 18, 2013. The time spent "in jail for the [continuous-violence-against-the-family] case" ran from the date of his indictment for that offense until the date of his sentence. Because the trial court correctly awarded jail-time credit based on that period of time, we overrule Benefield's fourth issue. *See* Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a)(1); *see also Collins v. State*, 318 S.W.3d 471, 473 (Tex. App.—Amarillo 2010, pet. ref'd) ("[T]he credit at issue relates not just to any time the defendant spent incarcerated before conviction. Rather, it is the time one is incarcerated for the case in which he is ultimately tried and convicted."); *Blackerby*, 2012 WL 6097306, at *3 (holding appellant not entitled to jail-time credit on intoxication manslaughter conviction for time spent in jail after arrest for felony DWI when not indicted for intoxication manslaughter until later date); *Martinez v. State*, No. 13-04-00085-CR, 2005 WL 1805500, at *3 (Tex. App.—Corpus Christi July 28, 2005, no pet.) (mem. op., not designated for publication) ("A trial court must award credit for time served for the same offense and not time incarcerated pre-trial for independent offenses.").

## VI. CONCLUSION

Having overruled Benefield's three issues,[11] we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 30, 2015

---

[11]Benefield expressly waived his second issue in a reply brief. Therefore, we do not consider it.

21